IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA DICKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10 C 1419 |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| HOLSTEN MANAGEMENT CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Veronica Dickerson worked as a janitor for defendant Holsten Management Corporation ("Holsten") for nearly eight years before she was fired, she claims due to her gender. Holsten argues that it had a non-discriminatory reason for its decision - Ms. Dickerson's conduct and performance - entitling it to judgment as a matter of law on Ms. Dickerson's Title VII claim. For reasons that precede the argument of pretext, and whether Holsten had a non-discriminatory reason to fire Ms. Dickerson, we find that Holsten is entitled to summary judgment [dkt. 59].[1] Because Ms. Dickerson requests to withdraw her Count II Equal Pay Act claim and makes no showing for a Tittle VII retaliation claim, we limit our discussion to Ms. Dickerson's claim that she was fired due to her gender.

**I. Facts**

Ms. Dickerson was already working as an elevator operator, desk clerk, and weekend janitor when Holsten took over building management of the Hilliard housing development in 2001, which

---

[1] The parties consented, pursuant to 28 U.S.C. §636(c), to have this matter proceed before this Court.

included four public housing buildings.[2] Holsten kept Ms. Dickerson on as an employee[3] and in the summer of 2004, Ms. Dickerson changed positions and began working exclusively as a janitor at the 2111 South Clark location.[4] That year, Ms. Dickerson's job required her to first keep the lobby area of the building clean, but soon her duties expanded to include cleaning any area in the 2111 South Clark building, and providing general maintenance such as moving furniture, stripping floors, maintaining storage areas and collecting trash from each floor.[5] Her compensation for this new position included a salary plus a rent-free four bedroom apartment, and she was permitted to use another apartment where her children could stay after school until she completed work.[6]

During her eight years working for Holsten, Ms. Dickerson was the only woman performing janitorial work at any of the four buildings.[7] During that time Ms. Dickerson had four supervisors who were property managers. Ms. Dickerson worked well with the first two managers, Loretta Ward and Regina Stewart, but admitted to having a somewhat strained relationship with her third supervisor, Rosette Starrou.[8] Ms. Dickerson described her last supervisor, Carol Redman, as "real evil" and "spiteful."[9] Despite this, Ms. Dickerson testified that she "did what she asked me to do" and then "got away from her."[10]

Ms. Dickerson's complaints began in 2006.[11] She testified that around that time she complained because Holsten gave new employees equipment, like carpet shampooers or floor

---

[2] Vickerson Dep. at 13-14, Def. Rule 56.1, appendix exh. D, dkt. 60-6 (hereinafter "Vickerson Dep.").
[3] Amd Ans. Comp. ¶¶5-7, Def. Rule 56.1, appendix exh. B, dkt. 60-4 (hereinafter "Amd. Ans. Compl.").
[4] Vickerson Dep. at 20.
[5] Vickerson Dep. at 24-25.
[6] Vickerson Dep. at 117-18, 122-23, 127-28.
[7] Amd Ans. Compl. ¶9.
[8] Vickerson Dep. at 57-59.
[9] Vickerson Dep. at 112.
[10] Vickerson Dep. at 134.
[11] Vickerson Dep. at 34, 73.

strippers, yet she did not receive these items when she asked for them.[12] She also referenced problems with snow removal and the fact that other janitors would be able to use a snow blower machine, but when it came to her, "I couldn't get the machine, and nobody wanted to come around and do my part..."[13] Ms. Dickerson, however, did not make a written complaint regarding the snow blower because she did not want to "make it bad" on herself.[14] Ms. Dickerson admits to getting a floor stripper in 2008, but she was required to share it with another janitor.[15]

None of these complaints were made to her property managers.[16] Instead, Ms. Dickerson would talk to Steve Johnson, who was Vice-President of Field Operations for Holsten.[17] Ms. Dickerson testified that she was "not really a complainer" so, for example, for the carpet machine she asked for it only "twice a year for maybe three years."[18] She also did not provide any written complaints, regarding either the machines or unequal treatment.[19] Ms. Dickerson testified that she "would let Steve know what was going on" and noted that Steve "knew I was being treated unfair."[20]

Holsten's problems with Ms. Dickerson are primarily limited to the last several months of her employment. For example, Ms. Dickerson testified that her property manager, Ms. Stavrou, had some problems with her and would often be looking for her.[21] She also testified that her next property manager, Ms. Redman, had several complaints against her, specifically that Ms. Dickerson's work was not sufficient and that she would "always" tell her that the bathrooms were

---

[12] Def's Rule 56.1Statement at ¶7, dkt. 60-1; Vickerson Dep. at 31-35.
[13] Vickerson Dep. at 39.
[14] *Id.* at 41.
[15] *Id.* at 31-32.
[16] *Id.* at 60.
[17] Johnson Dep. at 8, Def. Rule 56.1, appendix exh. F, dkt. 60-9.
[18] Vickerson Dep. at 74.
[19] Vickerson Dep. at 75.
[20] Vickerson Dep. at 75-76.
[21] Vickerson Dep. at 104-06.

not clean.[22] Ms. Dickerson also acknowledged that Holsten knew about the issues she had with Ms. Redman because Mr. Johnson met with her regarding these complaints. Mr. Johnson asked her "to do what [Ms. Redman] asks you to do."[23] Though he also agreed with Ms. Dickerson when she explained to him that she already was doing as Ms. Redman asked.[24]

On May 1, 2009, Ms. Dickerson was terminated by Mr. Johnson and the new property manager, Lionel Spires.[25] Ms. Dickerson testified that when she was terminated Mr. Johnson indicated that the new property manager had brought in his own cleaning crew so they had to let her go.[26] The termination letter Holsten gave Ms. Dickerson, however, did not state a reason for her termination.[27]

## II. Standard of Review

The Court will grant summary judgment under Federal Rule of Civil Procedure 56 if a party presents evidence that demonstrates the absence of a genuine issue of material fact.[28] The party seeking summary judgment may rely on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to show an absence of a genuine issue of material fact.[29] If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a genuine issue of material fact exists and the motion for summary judgment will be denied.[30] Courts consider the facts in the light most favorable to non-movants, drawing all reasonable inferences in their favor.[31]

---

[22] Vickerson Dep. at 113-14, 134.
[23] Vickerson Dep. at 113-14.
[24] *Id.*
[25] Def's Rule 56.1 Statement at ¶25, dkt. 60-1.
[26] Vickerson Dep. at 162.
[27] Def's Rule 56.1 Statement at ¶27, dkt. 60-1.
[28] *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[29] *Celotex Corp.*, 477 U.S. at 324.
[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[31] *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

In a discrimination case, summary judgment is improper "where a material issue involves any weighing of conflicting indications of motive and intent."[32] Put another way, summary judgment should be denied when "the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict."[33] But if not, summary judgment should be granted.[34]

**III.  Argument**

There are two ways a plaintiff can prove discrimination under Title VII: under either the direct or the indirect method of proof.[35] Ms. Dickerson advances both methods in opposing this motion. But before we move to that discussion, Ms. Dickerson spends a considerable portion of her argument claiming that much of Holsten's evidence is inadmissable hearsay. And without it, she believes questions of fact remain. We dive into that issue first.

   **A.  Hearsay**

Ms. Dickerson attacks Holsten's use of the following evidence: (1) three emails Ms. Redman sent to Mr. Johnson; (2) Holsten's interrogatory answers; and (3) both Mr. Johnson's and Ms. Dickerson's deposition testimony.

   **i.  Ms. Redman's Emails**

Ms. Dickerson first takes issue with three emails written by one of Ms. Dickerson's former supervisors, Carol Redman. Ms. Dickerson argues that these email messages are cited by Holsten

---

[32]*Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (*citing Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir.1980)).
[33]*Phelan v. City of Chicago*, 226 F.Supp.2d 914, 919 (N.D.Ill. 2002).
[34]*Phelan*, 226 F.Supp.2d at 919.
[35]*Scaife v. Cook Cnty,* 446 F.3d 735, 739 (7 Cir. 2006)(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973)).

for the truth of Ms. Redman's statements making them inadmissable hearsay. Ms. Dickerson then argues why these emails do not fall within two of the hearsay rule exceptions: present sense impression or records of a regularly conducted activity. Holsten counters that it is offering Ms. Redman's emails to show that Mr. Johnson discharged Ms. Dickerson in the *honest belief* that she had behaved badly and exhibited poor work habits. Holsten claims that it is not trying to prove whether the statements made by Ms. Redman, in the emails, are true.

Under the Federal Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[36] Unless an exception to the rule applies, hearsay statements are inadmissible.[37] Here, if Ms. Redman's three emails are being offered for the truth of the matter asserted - to prove Ms. Dickerson's "constant insubordination,"[38] that she has "temper tantrums,"[39] or that she failed to follow Ms. Redman's directives[40] - then they would be hearsay.

But such evidence is admissible when it is being offered for purposes other than for the truth of the matter asserted. Specifically, in employment discrimination cases complaints to supervisors are not inadmissible hearsay if they are offered for purposes of "evidence that the employer was acting on the basis of the complaints and not because of a discriminatory motive."[41] Holsten makes no attempt to prove that the statements made by Ms. Redman are true. Holsten simply asserts that the emails support Mr. Johnson's decision to discharge Ms. Dickerson because he believed she had

---

[36] Fed.R.Evid. 801(a).
[37] Fed.R.Evid. 802.
[38] Redman email dated 4/16/09 Def's Rule 56.1, appendix exh. C, dkt. 60-5.
[39] Redman email dated 11/13/08, Def's Rule 56.1, appendix exh. G, dkt. 60-10.
[40] Redman email dated 1/12/09, Def's Rule 56.1, appendix exh. H, dkt. 60-11.
[41] *Valente v. Shaker Advertising Agency, Inc.,* 1998 WL 242510, *6 (N.D. Ill. 1982) (citing *Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1322-23 (11th Cir. 1982)).

behaved badly. Because the emails are admissible, we decline to address Ms. Dickerson's extended discussion of the hearsay exceptions.

### ii. Interrogatory Answers

Ms. Dickerson also takes issue with Holten's interrogatory answers. The first interrogatory challenged requests the factual basis for Holsten's claim that Ms. Dickerson was fired due to her conduct. Holsten's answer states that it had ongoing problems with Ms. Dickerson's conduct and provides examples, such as her supervisor being unable to locate her during her shift and her failure to "cooperate with directives."[42]

Ms. Dickerson correctly cites the rule that a party's own interrogatory answer is "almost certainly hearsay when offered by that party himself to prove the truth of its contents..."[43] But again, Holsten argues that it is not offering this interrogatory answer to prove that Ms. Dickerson actually had recurring performance problems. As the interrogatory asks, Holsten responds with its reason for Ms. Dickerson's discharge. It is irrelevant whether Ms. Dickerson really could not be located, or whether she was insubordinate, as long as Holsten believed those things and discharged her because of that belief.

Ms. Dickerson also asserts that Holsten's interrogatory answers are not a substitute for Federal Rule of Civil Procedure 56(c)(4)'s requirement that declarations in support of a motion for summary judgment be made on personal knowledge. Ms. Dickerson is specifically concerned that Jackie Holsten, who has no personal knowledge of the activities outlined in the interrogatories, was the signatory for verification purposes. We are back to the same explanation highlighted above; the relevant question is not whether the recounted acts in the interrogatory responses happened (whether

---

[42]Def's Resp. to First Set of Supplemental Interrogs. at ¶2, appendix exh. I, dkt. 60-12.
[43]*Luster v. Ill. Dep't of Corr.,* 652 F.3d 726, 731 n. 2 (7th Cir. 2011).

Ms. Dickerson was insubordinate, could not be found, etc.), and whether Jackie Holsten was privy to those events taking place. It matters only that Holsten honestly believed Ms. Dickerson's performance was a problem and, therefore, fired her because of it. Furthermore, there is no requirement that Jackie Holsten, as the signatory, have personal knowledge of the events.[44] She must simply verify the answers provided on behalf of Holsten.[45]

### iii. Deposition Testimony

Ms. Dickerson next argues - with no support - that Ms. Dickerson's own testimony about two of her supervisors and what they said to her is barred hearsay. Specifically, Ms. Dickerson claims that Holsten cannot rely on Ms. Dickerson's testimony that Ms. Stavrou, as her supervisor, told her that she had problems with her and would call to locate her.[46] Ms. Dickerson also testified at her deposition that Ms. Redman, her last supervisor, had problems with her, criticized her work performance, and repeatedly complained to her that the bathrooms were not clean.[47] As pointed out by Holsten, this evidence is admissible for two reasons: (1) it is an admission by Ms. Dickerson that she was not meeting Holsten's expectations,[48] and; (2) the statements are not offered for the truth. Again, this evidence supports Holsten's reason to believe that Ms. Dickerson had performance problems.

Ms. Dickerson then quarrels with Mr. Johnson's deposition testimony where he discusses two reported incidents involving Ms. Dickerson and Ms. Redman. Ms. Dickerson argues that both

---

[44] *See Gingerich v. City of Elkhart Probation Dept.,* 273 F.R.D 532, 541 (N.D. Ind. 2011) (stating that the responding agent does not have to have personal knowledge of events).
[45] *See Gingerich,* 273 F.R.D. at 541.
[46] Vickerson Dep. at 105-06.
[47] *Id.* at 131-34.
[48] *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 545 (7th Cir. 2002)(holding that the relevant question is whether the plaintiff is meeting the employer's expectations at the time of termination).

incidents are offered by Holsten "to prove the truth of what Johnson was told happened."[49] But Holsten repeats that it is not attempting to prove that the incidents happened. It relies on the testimony only to show that Holsten acted on the basis of these complaints when it fired Ms. Dickerson, not because of a discriminatory motive. This testimony can, therefore, be used to support Holsten's motion.

### B. Direct Method

Because Ms. Dickerson presents her case under both the direct method and the indirect method, or burden-shifting analysis, we start with the direct method. Here, the burden is on Ms. Dickerson to show that her gender was a determining factor in Holsten's decision to terminate her.[50] She may demonstrate discriminatory intent directly in one of two ways. The first is through direct proof, such as an "explicit admission by the employer that a particular decision was motivated by discrimination."[51] Ms. Dickerson does not claim that Holsten made an outright "admission" of discrimination.

Still under the direct method, she can also show a "mosaic" of circumstantial evidence that points "'directly to a discriminatory reason for the employer's action.'"[52] A plaintiff's mosaic may be comprised of three categories of circumstantial evidence, each of which is sufficient by itself to support a judgment for her.[53] This could be evidence that other employees similarly situated were getting better treatment, or evidence that the plaintiff was qualified but passed over in favor of another employee not in the protected group, and that Holsten's stated reasons for her discharge are

---

[49] Pl's Resp. at 5, dkt. 67.
[50] *See Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1121 (7th Cir. 1998).
[51] *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 586-87 (7th Cir. 2011).
[52] *See Atanus v. Perry,* 2008 WL 696908, *6 (7th Cir. 2008).
[53] *Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 549 (7th Cir. 2011).

untruthful.[54] Put differently, the three categories of evidence have been summarized as follows:

> (1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action.[55]

Holsten argues that Ms. Dickerson fails to present any of these categories of evidence.

### i. Discrimination toward other women

Ms. Dickerson first argues that there is a common thread of discrimination against women because three female employees, Shoya Bowman, a leasing agent, Ms. Dickerson, and Carol Redman all lost their jobs. All three, Ms. Dickerson argues, complained to Mr. Johnson about work related problems and were terminated soon thereafter. Ms. Dickerson also claims that each was replaced by male employees.

We first note that, without more, the fact that men replaced these particular women in their positions does not alone evidence gender discrimination.[56] In some cases it may help to raise an inference, but alone it is not sufficient to show gender discrimination.[57]

With regards to Ms. Redman, Ms. Dickerson refers to the emails Ms. Redman wrote to Mr. Johnson expressing her complaints and then argues that 46 days after the last email, she was fired and replaced by a male property manager. Holsten points out the confusing nature of Ms. Dickerson's argument. On one hand she claims that Mr. Johnson wrongly fired Ms. Redman based on gender. Yet Ms. Dickerson herself testified that Ms. Redman was intolerable and unfair as a

---

[54]*See Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994).
[55]*Diaz,* 653 F.3d at 587; *see also Serednyj,* 656 F.3d at 549 (analyzing indirect evidence, under the direct method of proof, in three categories).
[56]*Cianci v. Pettibone Corp.,* 152 F.3d 723, 727 (7th Cir. 1998).
[57]*See Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir. 1996) (stating that a replacement of another race, sex or age could be an inference of discrimination, but it is not a necessary condition).

manager.

Ms. Dickerson fails to explain why Mr. Johnson's actions permits the inference that he discharged her because she was a women. Mr. Johnson fired many employees, both men and women. For example, in 2008 Mr. Johnson fired two male janitors.[58] Put simply, Ms. Dickerson presents no evidence that there was discriminatory animus on the part of Mr. Johnson when he fired Ms. Redman.

To support her own discharge as one based on gender, Ms. Dickerson refers to a particular conversation she had with another employee, leasing agent Steve Knox. Ms. Dickerson testified that Mr. Knox called Mr. Johnson to try to help her deal with her problems with Ms. Redman. According to Ms. Dickerson, Mr. Knox informed her that Mr. Johnson's response was to "stay out of it" because it was a "catfight."[59] But this piece of evidence alone does nothing. Even if this language was considered offensive, which we hesitate to say, additional evidence would be required to even be remotely regarded by a reasonable jury as a confession that her discharge was for a discriminatory purpose.[60] Furthermore, stray remarks that are not proximate nor related to the employment decision do not defeat summary judgment.[61] Ms. Dickerson offers no evidence as to when this comment was made or even in what context.

Finally, Ms. Dickerson claims that Ms. Bowman's discharge is also evidence of Holsten's discrimination towards women. Ms. Bowman began working at Holsten as a leasing agent in 2008.

---

[58]Def's Rule 56.1 Statement at ¶32, dkt. 60-1 (stating that several male janitors were fired over the years); Pl's Rule 56.1 Add'l Facts at ¶10, dkt. 68.
[59]Vickerson Dep. at 42.
[60]*See Overly v. KeyBank Nat'l Ass'n,* 662 F.3d 856, 865 (7th Cir. 2011)(holding that a "patently offensive" response to the plaintiff's resignation was not direct evidence of gender discrimination, noting that more would be required).
[61]*Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 781-82 (7th Cir. 2007).

She was the only female in her particular office. Only four months after she began, Mr. Johnson fired her. Ms. Bowman testified that he told her that there were too many employees in that location and that they needed to eliminate her position.[62]

Thereafter, Ms. Bowman filed sexual harassment and retaliation misconduct charges alleging that Mr. Knox and Sean Drumgoole, another leasing agent, sexually harassed her. She believed that she was discharged to conceal that Mr. Drumgoole and Mr. Knox - along with Mr. Johnson - were renting to women for sexual purposes.[63] She settled her case following a hearing at the Illinois Department of Human Rights.

Holsten does not provide much argument in response. Ultimately, however, the limited evidence Ms. Dickerson relies on is only speculation that the conduct was the result of gender discrimination. Reliance on speculation is not enough to get the case to a jury.[64]

### iii. Evidence that Men Systematically Received Better Treatment

Under this factor we look to Ms. Dickerson to provide evidence that a similarly situated male employee received more favorable treatment.[65] A similarly situated individual must have "enough common features" to allow for "a meaningful comparison."[66] In the typical case the common features include: (1) the same supervisor; (2) being subject to similar standards or protocols; and (3) engaged in similar conduct.[67] Here, a person doing janitorial or maintenance work in the same capacity as Ms. Dickerson would logically fit that description.

---

[62] Bowman Dep. at 29, Pl's Rule 56.1 Statement of Add'l Facts, dkt. 68-11, exh J (hereinafter "Bowman Dep.").
[63] Bowman Dep. at 42.
[64] *Overly v. KeyBank Nat. Ass'n,* 662 F.3d 856, 864 (7th Cir. 2011).
[65] *Coleman v. Donahoe,* 667 F.3d 835, 841 (7th Cir. 2012).
[66] *Coleman,* 667 F.3d at 841.
[67] *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir.2008).

Ms. Dickerson initially argues that she was the only female doing satisfactory maintenance and janitorial work in 2009 and she was fired. She claims that Kevin Cochran and Donald Ivy were maintenance workers and they kept their jobs. She also mentions that Sean Manuel, Juan Gonzales, Theodore King, and Terry Willey were janitors and they also kept their jobs.

But the only argument Ms. Dickerson presents under this factor is with respect to a "Kevin" mentioned by Ms. Redman in one of the three emails she sent to Mr. Johnson (that Ms. Dickerson claimed to be hearsay). In Ms. Redman's March 19, 2009 email, she wrote to Mr. Johnson that a "Kevin" refused to work weekends and she thought that "sound[ed] like insubordination."[68] Ms. Dickerson assumes this to be Kevin Cochran, one of the maintenance workers. Her entire argument that men systematically received better treatment relies on the fact that "Kevin" kept his job despite Ms. Redman's belief - that she shared with Mr. Johnson through an email - that he was also insubordinate.

Ms. Dickerson has far from met her burden. The sole fact that supports a finding that "Kevin" is similarly situated is (if he is indeed Kevin Cochran) that he was a maintenance worker and Ms. Dickerson also performed maintenance work. But that alone is not enough. We do not know if "Kevin" was subject to the same standards as Ms. Dickerson and there is no indication that he engaged in similar conduct.[69] As noted by Holsten, one insubordinate act claimed by Ms. Redman in an email does not equal the complaints that Ms. Dickerson herself testified to that related to her own conduct.

### iii. Pretext

Ms. Dickerson's principal argument for pretext is that Holsten has shifted its reasons for her

---

[68] Def's Rule 56.1, appendix exh. C, dkt. 60-6.
[69] *See Diaz,* 653 F.3d at 590.

firing, from the claim that she failed to perform her duties, to its claim that it had problems with her conduct, to its initial reason that Mr. Spires brought in his own cleaning crew. Ms. Dickerson attempts to distinguish Holsten's claim that she was not properly performing the duties of her job from Holsten's statement that she was fired for her conduct, asserting that these are inconsistent positions. We disagree. Summary judgment is appropriate if the proffered explanations are consistent "in substance if not word choice."[70] Furthermore, the two interrogatory responses Ms. Dickerson relies on do not seem to contradict at all because both state that she "was fired due to her conduct."[71] We find Holsten's overall account consistent with the evidence that problems with Ms. Dickerson's conduct were relayed to Mr. Johnson on more than one occasion. Ms. Dickerson must do more than allege that Holsten is lying about its reason to terminate her. She must "point to specific facts that cast doubt" on the reasons Holsten has offered.[72] We also do not find Mr. Johnson's statement that Mr. Spires was bringing in his own cleaning crew to tip the cast of doubt in her favor. If indeed Mr. Johnson was friendly with Ms. Dickerson, there are many reasons that he may not have wanted to detail negative reasons for her discharge.

Ms. Dickerson presents an additional reason to doubt Holsten's position: its decision to give her four weeks of severance. But this too fails. Ms. Dickerson relies on the Holsten employee handbook to assert that her receipt of four weeks of severance means that she was not terminated for misconduct. Holsten acknowledges that the employee handbook indicates that employees terminated for misconduct are to receive only two weeks of severance. But Holsten also notes that the handbook's introduction states that it "should be regarded as a set of guidelines only" and not

---

[70] *Rand v. CF Indus.,* 42 F.3d 1139, 1146 (7th Cir.1994).
[71] *Compare* Pl's Rule 56.1 Statement of Add'l Facts, exh. D at ¶7 *and* exh. H at ¶2.
[72] *Schuster v. Lucent Technologies, Inc.,* 327 F.3d 569, 578 (7th Cir. 2003).

a contract.[73] Holsten's choice to deviate from its guidelines does not, then, indicate a definitive shift in its position for discharging Ms. Dickerson. Finally, Ms. Dickerson's relationship with Mr. Johnson was overall quite positive.[74] It would not be surprising that he, perhaps, chose to increase her severance as he was apparently allowed to do.

### C. Indirect Method

In many respects Ms. Dickerson has simply merged both the direct method and the burden-shifting analysis in opposing Holsten's motion (which is understandable, considering that even the Seventh Circuit has commented that perhaps "the time has come to collapse all these tests into one."[75]). The indirect method requires a similar test, but with multiple parts. A plaintiff first carries the burden to show her prima facie case. The four steps require her to show that:

> (1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff.[76]

Once this prima facie case is established, a presumption of discrimination is triggered.[77] The burden then shifts to the defendant to explain a legitimate, nondiscriminatory, reason for its action.[78]

Under the direct method we already addressed Holsten's given reasons for Ms. Dickerson's discharge and how Ms. Dickerson failed to show that Holsten's "stated reason is a 'pretext.'"[79] But under the indirect method, we do not even need to go that far in the analysis. Ms. Dickerson has

---

[73] Pl's Rule 56.1 Statement of Add'l Facts, exh. A, dkt. 68.
[74] Vickerson Dep. at 76 (noting that Mr. Johnson understood that she was being treated unfairly) and 163 (stating that Mr. Johnson apologized several times when he discharged her and they hugged before she left).
[75] *Coleman,* 667 F.3d at 863 (Wood, D., concurring).
[76] *Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 750–51 (7th Cir.2006).
[77] *Coleman,* 667 F.3d at 845.
[78] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).
[79] *See Coleman,* 667 F.3d at 845.

satisfied the first and third factors of her prima facie case because she is a female who was fired. She, however, has not establish the fourth factor relating to a similarly situated male employee who was treated more favorably. Under the direct method we explained that Ms. Dickerson's attempt to compare herself to Mr. Cochran failed. And she did not attempt to compare herself to any other male employee. Without evidence that a similarly situated male janitor or maintenance worker received better treatment, her Title VII claim is doomed because she has not established her prima facie case.[80]

---

[80] *See Diaz,* 653 F.3d at 590 (finding that the indirect method would not resuscitate the plaintiff's claim because he failed to identify a similarly situated employee who received better treatment).

**IV.     Conclusion**

For the foregoing reasons, Holsten's motion for summary judgment is granted [dkt. 59 ]. We also grant Holsten's request to dismiss with prejudice Ms. Dickerson's Equal Pay Act claim and Title VII retaliation claim. When a court is faced with a "defendant's effort and expense of preparation for trial," coupled with the plaintiff's delay in prosecuting the action, or "insufficient explanation for the need to take a dismissal," it may consider such factors in denying a plaintiff's motion to dismiss.[81] Here, Ms. Dickerson has not filed a formal motion to dismiss either claim. But the result is the same because she has asked that these claims be withdrawn. Holsten has engaged in discovery on those two claims, at substantial cost, and filed a motion for summary judgment. It is only fair to dispose of those claims in a manner that will protect Holsten from future litigation. We, therefore, grant Holsten's motion with respect to these two claims as well.[82]

**IT IS SO ORDERED.**

**ENTERED:** September 27, 2012

                                      **UNITED STATES MAGISTRATE JUDGE**
                                      Susan E. Cox

---

[81] *See Pace v. Southern Exp. Co.,* 409 F.2d 331, 334 (7th Cir. 1969)(outlining factors that justify denial of a plaintiff's motion to dismiss, including defendant's filing of a motion for summary judgment and its effort and expense in preparing its case).

[82] Fed.R.Civ.P. 41(b)(providing that a defendant may move to dismiss a claim if a plaintiff fails to prosecute that claim).